## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

NATALIE PETERSEN and BLOOMSTRUCK LLC,

     Plaintiffs,

v.

MOSES GARCIA, City Attorney, in his individual capacity,
ALICIA CALDERÓN, former Deputy City Attorney, in her individual capacity,
PATTI GARCIA, former City Clerk, in her individual capacity, and the
CITY OF LOVELAND, COLORADO, a home rule municipality,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Natalie Petersen and Bloomstruck LLC, by and through their attorney, Troy D. Krenning, respectfully allege for their *Complaint and Jury Demand* as follows:

### JURISDICTION AND VENUE

1.    This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983.

2.    Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 1343.

3.    Jurisdiction supporting Plaintiffs' claims for attorneys' fees and costs are conferred by 42 U.S.C. § 1988.

4.    Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b).  All of the events and omissions alleged herein occurred within the state of Colorado and the above-named Defendants are residents of the state of Colorado.

## PARTIES

5.     Plaintiff Natalie Petersen is a citizen of the United States residing in Larimer County, Colorado.

6.     Plaintiff Bloomstruck LLC is a limited liability company organized and existing pursuant to the laws of the state of Colorado.

7.     Defendant Moses Garcia is a citizen of the United States and a resident of the state of Colorado.  At all times relevant to this matter, Moses Garcia was an attorney licensed to practice law in the state of Colorado and an official appointed to serve as the City Attorney of the City of Loveland, Colorado.  At the time of the events and omissions alleged herein, Moses Garcia advised and represented the interests of City Council, the City Manager's Office, the City Clerk's Office, and the City's municipal judges, while acting under color of state law as an appointed government official and chief legal advisor, and in accordance with the policies, customs, and practices of Defendant City of Loveland, Colorado.  Moses Garcia is sued in his individual capacity.

8.     Defendant Alicia Calderón is a citizen of the United States and a resident of the state of Colorado.  At all times relevant to this matter, Alicia Calderón was an attorney licensed to practice law in the state of Colorado employed as the Deputy City Attorney of the City of Loveland, Colorado and performed her duties under the supervision, direction, and control of Defendant Moses Garcia.  At the time of the events and omissions alleged herein, Alicia Calderón advised and represented the interests of the City Clerk's Office, both generally and with respect to the City's election matters, while acting under color of state law as a supervisory government attorney and prosecutor, and in accordance with the policies, customs, and practices of Defendant City of Loveland, Colorado.  Alicia Calderón is sued in her individual capacity.

9.      Defendant Patti Garcia is a citizen of the United States and a resident of the state of Colorado.  At all times relevant to this matter, Patti Garcia was employed as the City Clerk of the City of Loveland, Colorado and performed her duties under the supervision, direction, and control of the City Manager.  At the time of the events and omissions alleged herein, Patti Garcia facilitated and ensured the compliance of elections, while acting under color of state law as a municipal clerk, and in accordance with the policies, customs, and practices of Defendant City of Loveland, Colorado.  Patti Garcia is sued in her individual capacity.

10.      Defendant City of Loveland, Colorado (the "City") is a home rule municipality organized and existing pursuant to the laws of the state of Colorado and Article XX of the Colorado Constitution.  The City derives its structure of governance from its home rule charter ("Charter").  The City is responsible for the policies, customs, and practices of its agents, officials, and employees.

## FACTUAL ALLEGATIONS

### I.      *Campaign Finance Regulations – A Brief and Applicable History.*

11.      In 1997, Colorado enacted the Fair Campaign Practices Act, C.R.S. §§ 1-45-101, *et seq*.

12.      In 2002, jurisdiction to enforce campaign finance violations was conferred upon the Colorado Secretary of State in Article XXVIII, § 9(2)(a) of the Colorado Constitution:

> Any person who believes that a violation of section 3, section 4, section 5, section 6, section 7, or section 9 (1)(e), of this article, or of sections 1-45-108, 1-45-114, 1-45-115, or 1-45-117 C.R.S., or any successor sections, has occurred may file a written complaint with the secretary of state no later than one hundred eighty days after the date of the alleged violation. The secretary of state shall refer the complaint to an administrative law judge within three days of the filing of the complaint. The administrative law judge shall hold a hearing within fifteen days of the referral of the complaint, and shall render a decision within fifteen days of the hearing. The defendant shall be granted an extension of up to thirty days upon defendant's motion, or longer upon a showing of good cause. If the administrative law judge

determines that such violation has occurred, such decision shall include any appropriate order, sanction, or relief authorized by this article. The decision of the administrative law judge shall be final and subject to review by the court of appeals, pursuant to section 24-4-106 (11), C.R.S., or any successor section. The secretary of state and the administrative law judge are not necessary parties to the review. The decision may be enforced by the secretary of state, or, if the secretary of state does not file an enforcement action within thirty days of the decision, in a private cause of action by the person filing the complaint. Any private action brought under this section shall be brought within one year of the date of the violation in state district court. The prevailing party in a private enforcement action shall be entitled to reasonable attorneys' fees and costs.

13.     In 2003, the Colorado General Assembly revised C.R.S. § 1-45-116, "Home rule counties and municipalities," which states:

Any home rule county or municipality may adopt ordinances or charter provisions with respect to its local elections that are more stringent than any of the provisions contained in this act. Any home rule county or municipality which adopts such ordinances or charter provisions shall not be entitled to reimbursement pursuant to subsection 1-45-112 (2). **The requirements of article XXVIII of the state constitution and of this article shall not apply to home rule counties or home rule municipalities that have adopted charters, ordinances, or resolutions that address the matters covered by article XXVIII and this article**. (Emphasis added.)

14.     On November 6, 2007, the City's Charter was amended to adopt Article 17, "Campaigns," for the purpose of regulating campaign finance in City elections.

15.     Section 17-1 of the Charter sets forth the legislative declaration of Article 17, which states:

The citizens of the City of Loveland hereby find and declare that **large campaign contributions** to political candidates allow wealthy contributors and special interest groups to exercise a disproportionate level of influence over the political process; that **large campaign contributions** create the potential for corruption and the appearance of corruption; that the rising costs of campaigning for political office prevent qualified citizens from running for political office; and that the interests of the public are best served by full and timely disclosure of campaign contributions, strong enforcement of campaign laws, and limiting campaign contributions. (Emphasis added.)

16.     In *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the United States Supreme Court issued a landmark decision determining that the free speech clause of the First Amendment of the United States Constitution prohibited the government from restricting independent expenditures for political campaigns by corporations and other associations.

17.     Thereafter, the Colorado Court of Appeals decided *In re City of Colo. Springs*, 277 P.3d 937 (Colo. App. 2012), establishing that the requirements of Article XXVIII of the Colorado Constitution did not apply to home rule municipalities that have adopted their own campaign practices, and that neither the Secretary of State or the Administrative Law Judges had subject matter jurisdiction to apply the remedies afforded thereunder to campaign practices arising out of a home rule municipality's elections.

18.     On June 12, 2018, the United States District Court for the District of Colorado decided in *Holland v. Williams*, 457 F. Supp. 3d 979, that the provisions of Colo. Const. Art. XXVIII, § 9(2)(a) were facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution, as: (1) they permitted the regulation of core political speech that was content-based, serving to diminish first amendment speech; (2) they were not narrowly tailored to advance the state's interest in enforcing its campaign finance laws; and (3) they were unreasonable given they allowed "any person" to seek enforcement.

19.     Since the City's Charter was amended to adopt Article 17 on November 6, 2007, the City has failed to adopt additional charter provisions, ordinances, and resolutions establishing processes or procedural safeguards with respect to the investigation, enforcement, adjudication, and prosecution of alleged campaign finance violations as misdemeanor crimes punishable under the jurisdiction of the City's municipal court.

## II.     *People v. Bloomstruck LLC a.k.a. Reality Check Colorado.*

20.     On November 5, 2019, the City held a municipal election.

21.     During the 2019 election cycle, City Council member and incumbent, John Fogle, ran for re-election in the City's Ward III.

22.     Plaintiff Natalie Petersen ("Ms. Petersen"), the marketing consultant and principal member of Plaintiff Bloomstruck LLC ("Bloomstruck"), was approached to facilitate the creation and circulation of a postcard to the residents of the City's Ward III relative to City Council member Fogle's bid for re-election.

23.     Although she was not required to do so, on October 7, 2019, Ms. Petersen registered "Reality Check Colorado" with the Colorado Secretary of State as an independent expenditure committee and listed Bloomstruck as an associated entity.

24.     On October 9, 2019, Reality Check Colorado received a onetime donation of $2,000.00 from the Law Office of Troy D. Krenning, a Colorado limited liability company.

25.     Thereafter, over the course of the October 18–20, 2019 weekend, the postcard was mailed to the City's Ward III residents.

26.     On Monday, October 21, 2019, Defendant Patti Garcia e-mailed Plaintiffs at Bloomstruck's e-mail address, which Ms. Petersen listed with the Secretary of State when she registered Reality Check Colorado, to inform Plaintiffs that she had been advised that Reality Check Colorado expended funds related to the candidacy of City Council member and incumbent, John Fogle.

27.     Defendants Moses Garcia and Alicia Calderón were carbon copied on Patti Garcia's October 21, 2019 e-mail.

28.     Patti Garcia provided a link to City forms, directed Plaintiffs to Article 17 of the City's Charter, and stated that candidate committees, political committees, and issue committees were required to register with the City Clerk prior to accepting or making any contributions.

29.     Ms. Petersen responded to Patti Garcia that same day, stating that she had almost finished filling out the City's committee registration form but could not locate a box in which to properly designate Reality Check Colorado as an independent expenditure committee.

30.     Patti Garcia responded by providing Ms. Petersen with an image of how "a similar committee" completed the form.

31.     The image provided to Ms. Petersen was a screenshot of a committee registration form submitted by "Advancing Northern Colorado," which registered as an issue committee.

32.     Section 17-2 of the City's Charter, "Definitions," prefaces: "The following words, terms and phrases, when used in this [Article 17], shall have the meanings ascribed to them in this Section."

33.     Section 17-2(c) of the City's Charter defines a "candidate committee," in pertinent part, as: "a person, including the candidate, or persons with the common purpose of receiving contributions and making expenditures **under the authority of a candidate**."  (Emphasis added.)

34.     Section 17-2(h) of the City's Charter defines an "issue committee," in applicable part, as: "(1) Two (2) or more persons who are elected, appointed or chosen, or have associated themselves, for the purpose of accepting contributions and making expenditures to support or oppose **any ballot issue or ballot question**; or (2) Any partnership, committee, association, corporation, labor organization or other organization or group of persons that has accepted contributions or made expenditures to support or oppose **any ballot issue or ballot question**." (Emphasis added.)

35.     Subsections (j) and (j)(2) of Section 17-2 of the City's Charter defines a "political committee," in relevant part, as: "two (2) or more persons who are elected, appointed or chosen, or have associated themselves, for the purpose of making contributions to candidate committees, issue committees or other political committees, or for the purpose of making independent expenditures. **Political committee shall not include…any partnership, committee, association, corporation, labor organization or other organization or group of persons previously established for a primary purpose outside of the scope of this Article.**" (Emphasis added.)

36.     Section 17-2(i) of the City's Charter defines a "person" as: "any individual, partnership, committee, association, or other organization or group of persons. **Person shall not include corporations, labor unions or political parties.**" (Emphasis added.)

37.     Section 17-4 of the City's Charter, "Registration of Committees," requires only: (1) candidate committees; (2) issue committees; and (3) political committees to register with the City Clerk prior to accepting or making any contributions.

38.     Similarly, Section 17-6 of the City's Charter, "Disclosure; Filing of Reports," requires only: (1) candidate committees; (2) issue committees; and (3) political committees to disclose to the City Clerk contributions received, expenditures made, and obligations entered into by the committees.

39.     Since Reality Check Colorado was not accepting contributions and making expenditures to support or oppose a ballot issue or question and was already registered as an independent expenditure committee with the Secretary of State, Ms. Petersen did not believe Reality Check Colorado to be "a similar committee" to Advancing Northern Colorado.

40.    On the evening of October 21, 2019, the Reporter Herald, a local news outlet, published an article about the postcard titled, "Loveland candidate Fogle blames mayor for weekend attack ad; Marsh denies involvement."

41.    The article was published at 9:14 p.m. and updated at 9:27 p.m.

42.    The article quotes a written statement provided by City Council member Fogle, who blamed the City's mayor and her supporters for the postcard:

> "'Jacki Marsh and her supporters couldn't grandstand in council chambers any longer, so they resorted to negative Washington tactics to get their divisive message out,' [Fogle] said in a written statement.  'She is bringing divisive Washington politics to Loveland and does not have the leadership necessary to bring the community together.'"

43.    According to the article, City Council member Fogle provided the news outlet with a copy of the postcard that was mailed to his home address in Ward III, which the news outlet featured in the article with Mr. Fogle's address redacted:



44.     The article described the postcard as, "a drawing of Fogle as an octopus whose tentacles are labeled with what appear to be the initials of local political and business organizations… wearing a McWhinney-branded construction hat."

45.     The following day, on October 22, 2019, Plaintiffs received another e-mail from Patti Garcia inquiring into the status of Reality Check Colorado's committee registration and completed financial forms, the latter of which Patti Garcia said the City would consider to be "on time" if transmitted by e-mail no later than midnight.

46.     On October 24, 2019, Patti Garcia mailed a letter to Ms. Petersen and Reality Check Colorado at the return address listed on the back of the postcard.

47.     Defendants Moses Garcia and Alicia Calderón were carbon copied on Patti Garcia's October 24, 2019 letter.

48.     The letter states, a second time, that Patti Garcia had been "advised" that Reality Check Colorado expended funds related to the 2019 municipal election and that "committees related to candidates or ballot issues" were required to register and file financial reports with the City, regardless of any registration or filings submitted to the Secretary of State.

49.     The letter concludes by citing Section 17-11 of the City's Charter, "Any person who knowingly violates or fails to comply with any of the provisions of this [Article 17] commits a misdemeanor and is subject to a fine or imprisonment in accordance with ordinances adopted by the City Council pursuant to Section 4-14."

50.     On October 28, 2019, Stephanie Stout, an attorney, e-mailed Patti Garcia advising that she represented the interests of Bloomstruck and Reality Check Colorado.

51.     Ms. Stout informed Patti Garcia that Reality Check Colorado was an independent expenditure committee registered with the Colorado Secretary of State and that, since the City's Charter did not regulate independent expenditure committees, Reality Check Colorado would not be providing information to the City in addition to the Secretary of State.

52.     Patti Garcia replied to Ms. Stout citing *In re City of Colo. Springs*, 277 P.3d 937 (Colo. App. 2012) and countered that the City's Charter did address independent expenditures by defining them in Section 17-2(g), the definition of which includes political messages, defined in Section 17-2(k), that unambiguously refer to any specific candidate.

53.     Patti Garcia then harangued Ms. Stout by presenting a false dichotomy; that Reality Check Colorado was either a "political committee" that was required to register and file financial reports with the City Clerk's Office or a committee that made an independent expenditure that should have been reported to the City Clerk's Office within 3 days of obligating the funds pursuant to Section 17-19 of the City's Charter.

54. Patti Garcia concluded her e-mail by making a second reference to Section 17-19 of the City's Charter in addition to the following demand:

> "Either provide the information required under Charter Section 17-19 for the funds that have been obligated if Reality Check Colorado is a single person, or register the committee as a political committee per Loveland Charter definitions."

55. Section 17-2(g) of the City's Charter defines an "independent expenditure" as: "the payment of money by any person for the purpose of advocating the election, defeat or recall of a candidate, which expenditure is not controlled by, or coordinated with, any candidate or any agent of such candidate. Independent expenditure shall include expenditures for political messages which unambiguously refer to any specific public office or candidate for such office, **but shall not include expenditures made by persons, other than political committees, in the regular course and scope of their business** and political messages sent solely to their members." (Emphasis added.)

56. Section 17-2(k) of the City's Charter defines a "political message" as: "a message delivered by telephone, any print or electronic media or other written material which advocates the election or defeat of any candidate or which unambiguously refers to such candidate."

57. There is no Section 17-19 in the City's Charter.

58. Defendants Moses Garcia and Alicia Calderón were carbon copied on Patti Garcia's October 28, 2019 e-mail.

59. Via correspondence dated November 9, 2019, bearing the signature of Patti Garcia, an "apparent violation" of Article 17 of the City's Charter was reported to the City Manager.

60. In contrast to her prior communications, Patti Garcia settled on the accusation that Bloomstruck and Reality Check Colorado: (1) failed to register as a political committee, pursuant

to Section 17-4 of the Charter; and (2) failed to file required reports as a political committee, pursuant to Section 17-6 of the Charter.

61.     The correspondence from Patti Garcia concludes, "Due to these apparent violations, I am reporting to you.  A copy of this letter is being sent to the company and their attorney.  A failure to comply is a misdemeanor and is citable in municipal court."

62.     Defendants Moses Garcia and Alicia Calderón were carbon copied on Patti Garcia's November 9, 2019 correspondence.

63.     Bloomstruck was initially formed as a California limited liability company in May of 2009, without any political objectives, when its principal member, Ms. Petersen, resided in Hawthorne, California and had no reason to be involved in Loveland, Larimer County, or Colorado politics.

64.     Bloomstruck was re-organized as a Colorado limited liability company in November of 2016 to continue its original purpose of conducting sales and consulting activities upon Ms. Petersen's relocation to Colorado.

65.     The City's Charter expressly excepts existing partnerships that were previously established for a primary purpose outside of the scope of Article 17 as members, let alone formative members, of a "political committee."

66.     Thus, Bloomstruck was, and still is, by express definition, incapable of being or forming a "political committee" as defined by the City's Charter, let alone "failing to register" or "failing to file required reports" as one.

67.     There was, and still is, enough information in the public realm to establish Bloomstruck's history.

68.     On November 18, 2019, the Reporter Herald published another article about the postcard titled, "City of Loveland plans to take Reality Check Colorado to court over alleged charter violation."

69.     The article reported that Patti Garcia had begun "the process" of charging Reality Check Colorado with a misdemeanor but that Ms. Garcia said it remained unclear whether Reality Check Colorado included anyone other than its registered agent, Ms. Petersen.

70.     The article also includes a quote from Defendant Moses Garcia regarding the City's intention to file a complaint in the City's municipal court:

> "'The next step will be the complaint, and we're working on that so we can get that issued soon,' Moses Garcia said.  'We're sort of getting the process down right now, as we have no standard process or complaint for this.  For as long as I've been here, and that's going back about 14 years, we've never had this type of issue.'"

71.     On January 14, 2020, Ms. Petersen timely filed an independent expenditure report on behalf of Reality Check Colorado with the Secretary of State accounting for the period beginning October 1, 2019 through December 31, 2019 and listed a $2,000.00 starting balance.

72.     On January 30, 2020, the City, by and through Defendant Alicia Calderón, filed a criminal Complaint with the City's municipal court which brought two (2) charges against "Bloomstruck LLC, AKA Reality Check Colorado" for violations of Section 17-9 of the City's Charter.  Those charges read:

I.      The Defendant expended funds on a political message regarding a city council candidate and the expenditure was not coordinated with or controlled by any candidate or agent of the candidate, and the Defendant failed to report the expenditures to the City Clerk within three (3) business days after obligating the funds, violating Charter Section 17-9.

II.     The Defendant failed to provide notice to the City Clerk of an independent expenditure that included the person making the expenditure, the name of the candidate, a detailed description of the expenditures, the amount of the expenditures, and the date the funds were obligated, violating Charter Section 17-9.

73.     Section 17-9 of the City's Charter, "Independent Expenditures," provides: "Any person or political committee making independent expenditures totaling more than one hundred dollars ($100.00) shall deliver notice in writing of such independent expenditures to the City Clerk no later than three (3) business days after the day that such funds are obligated. Said notice shall include the following information: [Subsections (1) – (6) omitted].  For the purposes of this provision, funds shall be considered to have been obligated as soon as an agreement is reached for the provision of the property, materials or services in question, regardless of when payment is to be made for such property or services."

74.     As the factual basis thereof, the City submitted an affidavit endorsed by Patti Garcia on January 27, 2020.

75.     In her affidavit, Patti Garcia admitted to being aware, prior to the filing of the Complaint, that Reality Check Colorado registered as an independent expenditure committee with the Colorado Secretary of State.

76.     Patti Garcia also admitted that she, "observed that the disclosure period form [*sic*] 10/1/2019 through 12/31/2019, had zero total dollars declared spending, which is in direct conflict with my observations made above related to the postcard."

77.     Patti Garcia's affidavit includes a description of the postcard but omits how she became aware of the postcard when she first e-mailed Plaintiffs on October 21, 2019 at 4:59 p.m. as well as an explanation or observation regarding her certainty that over $100.00 were obligated or expended in relation to the postcard.

78.     Thus, according to the Complaint, Patti Garcia's affidavit, and the City's own Charter, Defendants Alicia Calderón and Patti Garcia brought duplicative criminal charges for "failing to provide the City Clerk notice of independent expenditures totaling more than one

hundred dollars ($100.00) within three (3) business days after such funds became obligated" and "failing to report expenditures," the latter of which is not a cognizable offense under Section 17-9 of the Charter.

79.     The forgoing criminal charges were brought based upon an anemic factual basis: (1) Patti Garcia observed a postcard that depicted a City Council member as an octopus; and (2) Patti Garcia observed an independent expenditure report filed with the Secretary of State that listed $0.00 in expenditures.

80.     On February 4, 2020, prior to being served with the Complaint or having any knowledge that a Complaint had been filed, Ms. Petersen filed an amended independent expenditure report on behalf of Reality Check Colorado with the Secretary of State, accounting for the period beginning October 1, 2019 through December 31, 2019.

81.     Ms. Petersen itemized the two (2) independent expenditures made in connection with the postcard in the amended report; an expenditure paid to Advanced Direct Marketing in the amount of $1,351.74 for printing the postcards and an expenditure paid to Bloomstruck in the amount of $648.26 for Ms. Petersen's graphic design of the postcard, totaling the amount of $2,000.00.

82.     Ms. Petersen also itemized the only donation received by Reality Check Colorado in the amount of $2,000.00 and identified the Law Office of Troy D. Krenning, LLC as the donor.

83.     Thereafter, on February 25, 2020, the City, by and through Defendant Alicia Calderón, filed an Amended Complaint against "Bloomstruck LLC, AKA Reality Check Colorado," which added two (2) additional charges and amended the previous two (2) charges. The charges then read:

    I.  The Defendant, one or more persons, have come together to fund a political message regarding a city council candidate in the November 5, 2019 election,

forming a political committee. The Defendant political committee has failed to register with the City Clerk, violating City of Loveland Charter ("Charter") Section 17-4.

II. The Defendant, one or more persons, have come together and formed a political committee to fund a political message regarding a city council candidate in the November 5, 2019 election, and the Defendant has failed to file required reports, violating Charter Section 17-6.

III. The Defendant, if only one person, expended funds on a political message regarding a city council candidate and the expenditure was not coordinated with or controlled by any candidate or agent of the candidate, and the Defendant failed to report the expenditures to the City Clerk within three (3) business days after obligating the funds, violating Charter Section 17-9.

IV. The Defendant failed to provide a notice to the City Clerk of an independent expenditure that included the person making the expenditure, the name of the candidate, a detailed description of the expenditures, the amount of the expenditures, and the date the funds were obligated, violating Charter Section 17-9.

84. As the factual basis thereof, the City submitted an amended affidavit endorsed by Defendant Patti Garcia on February 21, 2020.

85. Within her amended affidavit, Defendant Patti Garcia admitted that on February 4, 2020, she checked the Colorado Secretary of State's website and discovered that Ms. Petersen, as the registered agent for Bloomstruck, filed an amended independent expenditure report on behalf of Reality Check Colorado and listed a single monetary donation of $2,000.00 from the Law Office of Troy D. Krenning.

86. Plaintiffs entered a not guilty plea and requested a jury trial on June 4, 2020.

87. The trial was initially set for September 1, 2020.

88. On June 15, 2020, the City moved to recuse the deputy municipal judge presiding over Plaintiffs' matter, which motion was granted but later rescinded.

89. On June 25, 2020, Plaintiffs filed a motion for a bill of particulars.

90.     On June 29, 2020, the Law Office of Troy D. Krenning, LLC was also charged with violations of Sections 17-4, 17-6, and 17-9 of the City's Charter arising from the same supposed actions undertaken by Plaintiffs in Patti Garcia's amended affidavit.

91.     On July 7, 2020, the City, by and through Defendant Alicia Calderón, moved to dismiss the two (2) charges brought pursuant to Section 17-9 of the City's Charter.

92.     During discovery, the only copy of the postcard provided by the City was an unredacted copy of the postcard sent to City Council member Fogle's home address:



93.     Plaintiffs moved to dismiss the City's Amended Complaint for lack of subject matter jurisdiction, on the grounds that Article 17 of the City's Charter failed to provide a process or procedure for the City to investigate, enforce, adjudicate, and ultimately prosecute alleged campaign finance violations.

94.     Defendants were well aware of this policy deficit and, in an effort to remedy the same, attempted to persuade City Council to adopt an ordinance that had its first reading on September 1, 2020 and contained a process that differed substantially to the prosecution Plaintiffs were being subjected.

95.     However, the City's deputy municipal judge denied the motion to dismiss based on lack of subject matter jurisdiction.

96.     The trial was reset for December 11 & 15, 2020.

97.     Plaintiffs then moved to dismiss the charges for lack of probable cause, failure to charge a cognizable offense, and failure to vest the court with jurisdiction.

98.     Bloomstruck is a partnership that was previously established in 2009 for the purpose of conducting sales and consulting activities.

99.     Thus, Bloomstruck was, and still is, by express definition, incapable of being or forming a "political committee" as defined by the City's Charter, let alone "failing to register" or "failing to file required reports" as one.

100.    Where it is legally impossible for a defendant to have committed the offenses charged, there can be no probable cause to support a prosecution.

101.    Since it was a legal impossibility for Bloomstruck to have committed the offenses charged, there was no probable cause to support the City's prosecution.

102.    On October 28, 2020, Plaintiffs filed a motion to compel the identity of the accuser.

103.    Under the Sixth Amendment of the Constitution, persons accused of a crime have a right to confront the witnesses against them in a criminal action.

104.    Irrespective of this constitutionally guaranteed right, however, the motion to compel the identity of the accuser was denied by the City's deputy municipal judge based on an in

court admission by defendant Calderon that there was no accuser and that the only person responsible for bringing this action was defendant Garcia in her capacity of City Clerk.

105.    Upon Calderon's statement to the Court, the Court deemed the issue moot regarding the disclosure of a third party "accuser."

106.    During a hearing held on November 5, 2020, Alicia Calderón deviated from her prosecutorial function as an advocate during oral argument and became a witness, stating that it was a fact that Patti Garcia discovered the postcard on social media the weekend prior to her initial contact with Plaintiffs.  Calderón's on the record statement later turned out to be untrue according to the testimony of Defendant Patti Garcia during the Krenning Law, LLC jury trial.

107.    On November 24, 2020, the court declared a mistrial *sua sponte* due to COVID-19.

108.    The trial was reset for January 28 – 29, 2021.

109.    On January 21, 2021, the court declared another mistrial *sua sponte* due to COVID-19.

110.    The court adjourned the trial, without Plaintiffs' consideration, to April 13 & 16, 2021.

111.    Since Plaintiffs' counsel was unavailable on those dates, a motion to reset the trial was filed and subsequently granted on January 25, 2021.

112.    The trial was rescheduled a fourth time for May 25 & 28, 2021.

113.    In the meantime, in the separate criminal prosecution of the Law Office of Troy D. Krenning, LLC a jury trial occurred challenging the allegations leveled against it.

114.    During the Krenning trial, Patti Garcia, the supposed complainant, failed to corroborate Defendant Calderón's earlier claim of discovering the postcard on social media the weekend prior to her initial contact with Plaintiffs.

115.    Additionally, Defendant Patti Garcia was unable to recall how she first learned of the postcard during her sworn testimony.

116.    Defendant Garcia, testifying at the Krenning trial under oath, directly contradicted the prior statement of Defendant Calderon, implying that Defendant Calderón lied to the Court on November 5, 2020.

117.    After less than fifteen (15) minutes of deliberation, the jury found the Law Office of Troy D. Krenning, LLC not guilty of all charges, including the false allegation that the law Office and Bloomstruck collaborated to form a political committee.

118.    On March 8, 2021, the City, by and through Defendant Alicia Calderón, filed a motion to dismiss the remaining charges against Plaintiffs, obviously aware that the City could not prove a criminal conspiracy given the jury verdict of not guilty in the Krenning Law, LLC case.

119.    Plaintiffs filed an objection to the City's motion to dismiss on March 12, 2021 and requested a finding of innocence in accordance with the disposition reached in the case against the Law Office of Troy D. Krenning.

120.    However, on March 24, 2021, the City's deputy municipal judge dismissed the charges with prejudice, without making the requested finding and over Plaintiffs' objections.

121.    At the onset of this matter, Defendants Calderón and Moses Garcia were not acting as "prosecutors," rather they were acting as investigators.  Defendant Patti Garcia, under oath, testified at the Krenning Law, LLC trial that she did not conduct any investigation, and was not sure who within the City of Loveland did.

122.    Upon information and belief, the "investigation" of this case and the related Krenning Law, LLC case was investigated by Defendants Calderón and Moses Garcia.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### *42 U.S.C. § 1983 – First Amendment Violation – Retaliation*

123.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the forgoing paragraphs with the same force and effect as if set forth at length herein.

124.    At all times herein relevant, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia were acting under color of state law with respect to their actions and inactions.

125.    The forgoing Defendants are "persons" under 42 U.S.C. § 1983.

126.    At the time of the Defendants' conduct, Plaintiff Natalie Petersen had, and still has, clearly established, constitutionally protected rights under the First Amendment to engage in political speech, whether actual or perceived, and to freely associate with others who have similar political beliefs.

127.    In addition, at the time of the Defendants' conduct, Plaintiff Bloomstruck, as a domestic limited liability company, had, and still has, a clearly established, constitutionally protected right to engage in political speech, even if said speech merely suggests a transaction.

128.    Plaintiffs, and each of them, were engaged in a constitutionally protected activity when they facilitated the creation and circulation of a postcard to the residents of the City's Ward III relative to City Council member Fogle's bid for re-election.

129.    The postcard designed by Natalie Petersen, the marketing consultant of Bloomstruck, depicted a City Council member as an octopus and was content-based speech.

130.    In response to Plaintiffs' constitutionally protected activity and content-based speech, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia caused Plaintiffs to be subjected to a criminal prosecution without sufficient evidence to believe Plaintiffs committed the crimes charged.

131.    The forgoing conduct, to which Plaintiffs were subjected, caused Plaintiffs to suffer injuries that would chill a person of ordinary firmness from continuing to engage in their freedom of political speech and association, such as emotional distress, suffering, loss of reputation, humiliation, mental anguish, loss of economic opportunity, and the pecuniary losses associated with defending the action.

132.    Defendants' conduct was an ongoing act of political retribution undertaken with the intent to quell Plaintiffs' political speech activities and associations.

133.    In fact, Defendants succeeded in their mission, as Plaintiffs have not engaged in political speech with respect to City of Loveland politics since the 2019 municipal election, despite being contacted by individuals and entities requesting services for various political related marketing opportunities.

134.    The actions of Defendants Moses Garcia, Alicia Calderón, and Patti Garcia were substantially motivated in response to Plaintiffs' political speech activities and associations.

135.    There is a nexus between: (1) the dispatch of the postcard; (2) Patti Garcia's initial contact with the Plaintiffs; (3) City Council member Fogle's written statement to a local news outlet which memorialized his ire for the City's mayor and her supporters in response to the postcard, betraying a perceived association between the postcard and the City's mayor; (4) Moses Garcia's apparent support of prosecuting the matter despite providing a statement to the media admitting that the City had "no standard process" with which to prosecute alleged campaign finance violations; (5) Alicia Calderón's and Patti Garcia's initiation of criminal proceedings in the absence of charter provisions, ordinances, and resolutions setting forth a process or procedural safeguards with respect to investigating, enforcing, adjudicating, and ultimately prosecuting alleged campaign finance violations as misdemeanor crimes punishable under the jurisdiction of

the City's municipal court; (6) Alicia Calderón's continued prosecution without sufficient evidence to believe Plaintiffs committed the crimes charged; (7) Alicia Calderón's deviation from her prosecutorial function as an advocate to fill the role of a witness; (8) Patti Garcia's willingness to endorse affidavits as the complainant; (9) the City's provision of a copy of the postcard with City Council member Fogle's home address during discovery; and (10) the perceived association between Plaintiffs and the Law Office of Troy D. Krenning.

136.    The forgoing conduct of Alicia Calderón occurred under Moses Garcia's supervision, knowledge, and consent.

137.    Defendant City of Loveland's own policies, or lack thereof, together with the customs or practices of the City's agents, officials, and employees, caused Plaintiffs' constitutional deprivations.

138.    Section 17-11(a) of the City's Charter sets forth: "Any person who knowingly violates or fails to comply with any of the provisions of this Article commits a misdemeanor and is subject to a fine or imprisonment in accordance with ordinances adopted by the City Council pursuant to Section 4-14."

139.    It is customary amongst the agents, officials, and employees of the City to pander to the political desires of sitting council members, a two-thirds (2/3) majority of whom can remove Defendant Moses Garcia and the City Manager from their respective posts at their pleasure.

140.    Upon information and belief, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia acted upon the expectations and instructions of one or more officials with final policy-making authority, such as a council member or the City Manager.

141.    Wherefore, as a result of Defendants' actions and inactions, Plaintiffs have sustained significant damages.

## SECOND CLAIM FOR RELIEF
### *42 U.S.C. § 1983 – Fourth Amendment Violation – Malicious Prosecution*

142.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the forgoing paragraphs with the same force and effect as if set forth at length herein.

143.    At all times herein relevant, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia were acting under color of state law with respect to their actions and inactions.

144.    The forgoing Defendants are "persons" under 42 U.S.C. § 1983.

145.    As set forth above and reiterated here, the City's prosecution of Plaintiffs was substantially motivated by the issuance of a postcard depicting a City Council member as an octopus during the 2019 municipal election cycle.

146.    At the time of Defendants' conduct, Plaintiffs Natalie Petersen and Bloomstruck had clearly established, constitutional protections under the Fourth Amendment against unreasonable searches, seizures, and malicious prosecutions.

147.    Nonetheless, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia maliciously, recklessly, knowingly, intentionally, willfully, wantonly, and with deliberate indifference caused Plaintiffs to be subjected to a continued prosecution without sufficient evidence to believe Plaintiffs committed the crimes charged.

148.    Further, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia knew, or should have known, that the City of Loveland's failure to adopt an appropriate level of process or procedural safeguards, as well as to vest its municipal court with jurisdiction, would result in prolonging the City's prosecution.

149.    The charges were terminated in favor of Plaintiffs on March 24, 2021 by virtue of their dismissal with prejudice after the Law Office of Troy D. Krenning, LLC was found innocent of identical charges by a jury on March 2, 2021.

150.    However, the charges should not have been brought to begin with, as there existed no probable cause in which to support their prosecution.

151.    The Charter's definition of an "independent expenditure" excepts expenditures made by persons, other than political committees, in the regular course and scope of their business.

152.    Plaintiff Natalie Petersen provides graphic design services through Bloomstruck.

153.    Plaintiffs Natalie Petersen and Bloomstruck made expenditures in the regular course and scope of their services when they facilitated the creation and circulation of the postcard.

154.    Defendant Patti Garcia observed a single postcard that depicted a City Council member as an octopus.

155.    Defendant Patti Garcia also observed an independent expenditure report filed with the Secretary of State that listed $0.00 in expenditures.

156.    Upon the foregoing, it was impossible for Defendants to believe Plaintiffs violated Section 17-9 of the Charter.

157.    The Charter's definition of a "political committee" excepts partnerships previously established for a primary purpose outside of the scope of Article 17.

158.    Bloomstruck is a partnership that was previously established in 2009 for the purpose of conducting sales and consulting activities.

159.    Thus, it was impossible for Bloomstruck to be or form a "political committee."

160.    Since it was impossible for Bloomstruck to qualify as a "political committee" under the City's Charter, it was impossible for Bloomstruck to violate Sections 17-4 and 17-6 of the Charter.

161.    Accordingly, there was no probable cause to support the City's prosecution of those charges.

162.     The foregoing revelations were capable of being uncovered with a little deductive reasoning and a few simple Google searches prior to filing charges.

163.     Defendants acted maliciously, recklessly, knowingly, intentionally, willfully, wantonly, and with deliberate indifference when: (1) upon information and belief, Alicia Calderón deviated from her prosecutorial function as an advocate to fill the role of an investigator prior to filing charges; (2) Patti Garcia volunteered to endorse affidavits as the complaining witness against Plaintiffs to shield the identity of the actual complainant; (3) Moses Garcia and Alicia Calderón advised Patti Garcia and others about the charges when each of them knew, or should have known, that there was not sufficient evidence to believe Plaintiffs committed the crimes charged; (4) Alicia Calderón and Patti Garcia initiated criminal proceedings in the absence of ordinances, charter provisions, and resolutions setting forth a process or procedural safeguards with respect to investigating, enforcing, adjudicating, or prosecuting alleged campaign finance violations as misdemeanor crimes punishable under the jurisdiction of the City's municipal court; (5) Alicia Calderón knowingly subjected Plaintiffs to a continued prosecution without jurisdiction; (6) Alicia Calderón continued an overzealous prosecution without sufficient evidence to believe either Plaintiff committed the crimes charged; and (7) Alicia Calderón deviated from her prosecutorial function as an advocate to fill the role of a witness.

164.     The forgoing conduct of Alicia Calderón occurred under Moses Garcia's supervision, knowledge, and consent.

165.     Defendants' conduct was driven with the malicious intent of quelling Plaintiffs' political speech activities and associations by inflicting lasting mental, emotional, professional, and financial harms.

166.    Defendant City of Loveland's own policies, or lack thereof, together with the customs or practices of the City's agents, officials, and employees, caused Plaintiffs' constitutional deprivations.

167.    Section 17-11(a) of the City's Charter sets forth: "Any person who knowingly violates or fails to comply with any of the provisions of this Article commits a misdemeanor and is subject to a fine or imprisonment in accordance with ordinances adopted by the City Council pursuant to Section 4-14."

168.    It is customary amongst the agents, officials, and employees of the City to pander to the political desires of sitting council members, a two-thirds (2/3) majority of whom can remove Defendant Moses Garcia and the City Manager from their respective posts at their pleasure.

169.    Upon information and belief, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia acted upon the expectations and instructions of one or more officials with final policy-making authority, such as a council member or the City Manager.

170.    Wherefore, as a result of Defendants' actions and inactions, Plaintiffs have sustained significant damages.

**THIRD CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourteenth Amendment Violation – Due Process Deprivation*

171.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the forgoing paragraphs with the same force and effect as if set forth at length herein.

172.    At all times herein relevant, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia were acting under color of state law with respect to their actions and inactions.

173.    The forgoing Defendants are "persons" under 42 U.S.C. § 1983.

174.    At the time of Defendants' conduct, Plaintiffs Natalie Petersen and Bloomstruck had clearly established, constitutionally protected rights under the Fourteenth Amendment against

the enforcement of any law that would deprive any person of life, liberty, or property interests without due process of law.

175.    Since Defendant City of Loveland's Charter was amended to adopt Article 17 on November 6, 2007, the City of Loveland has failed to adopt additional charter provisions, ordinances, and resolutions establishing processes or procedural safeguards with respect to the investigation, enforcement, adjudication, and prosecution of alleged campaign finance violations as misdemeanor crimes punishable under the jurisdiction of the City's municipal court.

176.    Defendants Moses Garcia, Alicia Calderón, and Patti Garcia were each aware of the aforementioned policy deficit.

177.    Nevertheless, Moses Garcia, while acting under color of state law as: (1) the advisor to City Council, the City Manager's Office, the City Clerk's Office, and the City's municipal judges; and (2) the supervising attorney and decision maker of his office, directed, consented, and/or provided advice with respect to the prosecution that ensued.

178.    In addition, Alicia Calderón, while acting under color of state law as: (1) the advisor to the City Clerk's Office, both generally and with respect to the City's election matters; and (2) a prosecutor, brought and pursued the charges in the City's municipal court.

179.    Moreover, Patti Garcia, while acting under color of state law as the City's municipal clerk, which carries with it the responsibility of ensuring the compliance of the City's elections, initiated criminal proceedings in the City's municipal court.

180.    Further, and upon information and belief, in addition to providing advice about election law and prosecuting the charges, Defendant Alicia Calderón also acted as an investigator prior to filing the Complaints.

181.    Thus, the City was clearly not an impartial tribunal.

182.    Plaintiffs did not receive adequate notice of the alleged violations prior to the filing of criminal charges, as neither Patti Garcia or Alicia Calderón could intelligibly or consistently articulate which offenses were committed and by whom.

183.    Plaintiffs were denied the opportunity to be heard when the matter terminated with prejudice prior to trial over Plaintiffs' objections.

184.    The City of Loveland's failure to adopt an appropriate level of process or procedural safeguards, as well as to vest its municipal court with jurisdiction, caused Plaintiffs to be subjected to, and ultimately served in furtherance of, a malicious and continued prosecution that lasted for a period of approximately 14-months and deprived Plaintiffs of their constitutionally protected right to confront the witnesses against them.

185.    Defendant Alicia Calderón's conduct, as alleged herein, occurred under Defendant Moses Garcia's supervision, knowledge, and consent.

186.    Defendant City of Loveland's own policies, or lack thereof, together with the customs or practices of the City's agents, officials, and employees, caused Plaintiffs' constitutional deprivations.

187.    Section 17-11(a) of the City's Charter sets forth: "Any person who knowingly violates or fails to comply with any of the provisions of this Article commits a misdemeanor and is subject to a fine or imprisonment in accordance with ordinances adopted by the City Council pursuant to Section 4-14."

188.    It is customary amongst the agents, officials, and employees of the City to pander to the political desires of sitting council members, a two-thirds (2/3) majority of whom can remove Defendant Moses Garcia and the City Manager from their respective posts at their pleasure.

189.    Upon information and belief, Defendants Moses Garcia, Alicia Calderón, and Patti Garcia acted upon the expectations and instructions of one or more officials with final policy-making authority, such as a council member or the City Manager.

190.    Wherefore, as a result of Defendants' actions and inactions, Plaintiffs have sustained significant damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Natalie Petersen and Bloomstruck LLC pray for:

a.  Declaratory and injunctive relief, as appropriate;

b.  compensatory and consequential damages for the damages, injuries, and losses suffered, including but not limited to: past and future pecuniary and non-pecuniary losses, emotional distress, suffering, loss of reputation, humiliation, inconvenience, mental anguish, loss of economic opportunity, and loss of liberty, in an amount to be determined at trial;

c.  all economic losses on all claims allowed by law;

d.  punitive damages on all claims allowed by law, in an amount to be determined at trial;

e.  an Order mandating appropriate equitable relief;

f.  attorneys' fees and costs incurred herein, pursuant to 42 U.S.C. § 1988;

g.  an award of pre- and post-judgment interest at the lawful rate; and

h.  such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 31st day of March 2022.

Respectfully,

By:   /s/ *Troy D. Krenning*
Attorney
Law Office of Troy D. Krenning, LLC
2908 Bent Drive
Loveland, Colorado 80538
T: (970) 292-8290
E: troy@krenninglaw.com
***Attorney for Plaintiffs***