**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-00797-NYW-NRN

NATALIE PETERSEN, and
BLOOMSTRUCK, LLC,

      Plaintiffs,

v.

MOSES GARCIA, City Attorney, in his individual capacity,
ALICIA CALDERÓN, former Deputy City Attorney, in her individual capacity,
PATTI GARCIA, former City Clerk, in her individual capacity, and
CITY OF LOVELAND, COLORADO,  home rule municipality,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion and Brief in Support of Summary Judgment (the "Motion" or "Motion for Summary Judgment") [Doc. 33].  Upon review of the Motion and the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter.  For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED**.

## BACKGROUND

This case arises out of municipal criminal charges filed against Plaintiff Bloomstruck, LLC ("Bloomstruck") in January 2020.  *See generally* [Doc. 1].  Plaintiff Natalie Peterson ("Ms. Peterson"), the marketing consultant and principal member of Bloomstruck, was hired to create a postcard depicting a political message that was mailed to Ward III residents in the city of Loveland, Colorado during the 2019 City Council election.  [*Id.* at ¶¶ 22, 25, 43].  Bloomstruck was

subsequently charged in municipal court based on an alleged failure to properly report its expenditures in violation of the City of Loveland's Charter. [*Id.* at ¶ 72]. The charges were eventually voluntarily dismissed by the City. [*Id.* at ¶¶ 118, 120].

Plaintiffs allege generally that the charges filed against Bloomstruck were "substantially motivated [by] Plaintiffs' political speech activities and associations" and were brought without probable cause. [*Id.* at ¶¶ 134, 150]. Plaintiffs initiated this civil action on March 31, 2022 against four Defendants: the City of Loveland, Colorado (the "City" or "City of Loveland"); Moses Garcia, the Loveland City Attorney; Alicia Calderón, the former Deputy City Attorney ("Ms. Calderón"); and Patti Garcia, the former City Clerk (collectively, "Defendants").[1] [*Id.* at 1]. They assert three claims for relief, which each appear to be asserted against all Defendants: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983; (2) a Fourth Amendment malicious prosecution claim under § 1983; and (3) a Fourteenth Amendment due process claim under § 1983. [*Id.* at 22–31].

Defendants filed the instant Motion on January 10, 2023, [Doc. 33], which has been fully briefed. [Doc. 47; Doc. 50]. The matter is thus ripe for adjudication, and the Court finds that oral argument would not materially assist in its resolution. The Court considers the Parties' arguments below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so

---

[1] For purposes of clarity, the Court refers to Defendants Moses Garcia and Patti Garcia using their full names.

that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler*, 144 F.3d at 670.

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and the record before the Court and are undisputed unless otherwise noted.

1.      The City of Loveland is a home rule municipality with a governing Charter.  [Doc. 33 at ¶ 1; Doc. 47 at 1];[2] *see generally* [Doc. 33-2].

2.      The Loveland Charter contains the following definitions:

(g) *Independent expenditure* shall mean the payment of money by any person for the purpose of advocating the election, defeat or recall of a candidate, which expenditure is not controlled by, or coordinated with, any candidate or any agent of such candidate.  *Independent expenditure* shall include expenditures for political messages which unambiguously refer to any specific public office or candidate for such office, but shall not include expenditures made by persons, other than political committees, in the regular course and scope of their business and political messages sent solely to their members.

(i) *Person* shall mean any individual, partnership, committee, association, or other organization or group of persons. *Person* shall not include corporations, labor unions or political parties.

(j) *Political committee* shall mean two (2) or more persons who are elected, appointed or chosen, or have associated themselves, for the purpose of making contributions to candidate committees, issue committees, or other political committees, or for the purpose of making independent expenditures.  *Political committee* shall not include:

   (1) Issue committees or candidate committees as otherwise defined in this Section; or

   (2) Any partnership, committee, association, corporation, labor organization or other organization or group of persons previously established for a primary purpose outside of the scope of this Article.

(k) *Political message* shall mean a message delivered by telephone, any print or electronic media or other written material which advocates the election or defeat of any candidate or which unambiguously refers to such candidate.

---

[2] Where Plaintiffs do not identify a dispute, the Court cites to the page number on which the dispute should appear.

[Doc. 33 at ¶ 2; Doc. 47 at ¶ 2; Doc. 33-2 at 2].[3]

3.      Under the Charter, political committees are required to register with the City Clerk before accepting or making contributions and are required to report contributions greater than $20. [Doc. 33 at ¶ 3; Doc. 47 at 1; Doc. 33-2 at 2, 4].

4.      The Charter also requires "[a]ny person or political committee making independent expenditures totaling more than one hundred dollars ($100.00) [to] deliver notice in writing of such independent expenditures to the City Clerk."  [Doc. 33 at ¶ 4; Doc. 47 at ¶ 4; Doc. 33-2 at 5].

5.      The Charter provides that "[a]ny person who knowingly violates or fails to comply with any of the provisions of this Article commits a misdemeanor."  [Doc. 33 at ¶ 6; Doc. 47 at ¶ 6; Doc. 33-2 at 5].

6.      Defendant Patti Garcia worked as the Loveland City Clerk, and her duties included assisting the public in complying with Article 17 of the Charter and reporting apparent violations of the Charter to the City Manager.  [Doc. 33 at ¶ 5; Doc. 47 at 1; Doc. 33-1 at 9–26:2;[4] Doc. 33-2 at 5].

7.      On or around October 2, 2019, Ms. Peterson was contacted by Gil Barela ("Mr. Barela"), the Larimer County Democratic Party Chair, to "translate" his design into a postcard. [Doc. 33 at ¶ 8; Doc. 47 at ¶ 8; Doc. 33-4 at 41:8–11].

---

[3] In some instances, Plaintiffs dispute Defendants' recitation of Charter provisions as "incomplete," but do not dispute the language provided by Defendants. *See, e.g.*, [Doc. 47 at ¶¶ 2, 4, 6].  The Court includes the full relevant Charter provisions and construes these assertions as undisputed.

[4] When citing to transcripts, the Court uses the document number generated by the CM/ECF system, but the page and line numbers displayed on the transcript.

8.     Mr. Barela suggested a design concept for the postcard, which was to depict City Council member John Fogle as an octopus and advocate for his defeat in the 2019 City Council election.  [Doc. 33 at ¶ 9; Doc. 47 at 2; Doc. 33-4 at 36:11–22, 55:3–18; Doc. 33-6].

9.     Ms. Peterson informed Mr. Barela that she would charge $2,000 for the project, and Mr. Barela hired Bloomstruck for the job.  [Doc. 33 at ¶ 10; Doc. 47 at 2; Doc. 33-4 at 44:19–45:9].

10.     Ms. Peterson performed the job on behalf of Bloomstruck.  [Doc. 33 at ¶ 11; Doc. 47 at 2; Doc. 33-4 at 45:21–24].

11.     Ms. Peterson created an entity called Reality Check Colorado ("Reality Check") because Ms. Peterson did not want her home address or name listed on the postcard.  [Doc. 33 at ¶ 15; Doc. 47 at ¶ 14;[5] Doc. 47-15 at 61:3–8].[6]

12.     On October 7, 2019, Ms. Peterson registered Reality Check with the State of Colorado as an Independent Expenditure Committee.  [Doc. 33 at ¶ 16; Doc. 47 at ¶ 15; Doc. 33-7 at 2].

13.     The back of the postcard stated that it was "paid for by: REALITY CHECK COLORADO."  [Doc. 33 at ¶ 17; Doc. 47 at 2; Doc. 33-6 at 2].

---

[5] It appears that Plaintiffs began misnumbering the paragraphs referenced from Defendants' Motion for Summary Judgment starting with paragraph 11 in their Response.  *See* [Doc. 47 at 2]. Defendants acknowledge this in their reply brief and cite to both Plaintiffs' numbered paragraphs and the paragraph number that Defendants understand Plaintiffs to be referencing.  *See* [Doc. 50 at 2–5].  The Court cites to the paragraph numbers used in each side's briefing, though the Court notes that the numbers do not always match.

[6] Defendants assert that Ms. Petersen created Reality Check "[s]o that Bloomstruck and Petersen were not immediately traceable to the Postcard."  [Doc. 33 at ¶ 15].  This assertion is disputed by Plaintiffs, *see* [Doc. 47 at ¶ 14], and does not accurately portray Ms. Petersen's testimony.  *See* [Doc. 47-15 at 61:3–8 ("I didn't want my home address on name on a postcard.")].  In their Reply, Defendants concede that Ms. Petersen's "testimony explains why she created Reality Check." [Doc. 50 at 2].  The Court thus deems this fact undisputed.

14.     Approximately 2,000 postcards were mailed to the City's Ward III residents, which cost approximately $597 in postage.  [Doc. 33 at ¶ 21; Doc. 47 at 2; Doc. 33-4 at 73:12–74:2, 75:20–22].[7]

15.     On October 21, 2019, Patti Garcia emailed Bloomstruck and, referencing the expenses "related to the candidacy of John Fogle," advised it that, under the Charter, "political committees and issue committees shall register with the City Clerk before accepting or making any contributions" and "all . . . political committees . . . shall report to the City Clerk their contributions received."  [Doc. 33 at ¶ 33; Doc. 47 at ¶ 32; Doc. 33-7 at 3].  The email noted that "[t]he next Campaign Finance Report is due tomorrow (October 22[, 2019])[.]"  [Doc. 33-7 at 3].

16.     Neither Ms. Petersen nor Bloomstruck submitted anything by the October 22, 2019 deadline.  [Doc. 33 at ¶ 34; Doc. 47 at ¶ 33; Doc. 33-7 at 4].[8]

17.     Patti Garcia believed there was a violation of the Charter and reported the purported violation to the City Manager.  [Doc. 33 at ¶ 37; Doc. 47 at 4; Doc. 33-1 at 42:12–23].

18.     In October 2019, after sending out the postcards, Ms. Peterson filed an expenditure detail report with the State of Colorado in which she stated that Reality Check paid Bloomstruck $648.26 for the design and production of the postcard and paid $1,351.74 to Advanced Direct Marketing for printing and mailing of the postcard.  [Doc. 33 at ¶ 39; Doc. 47 at 4; Doc. 33-12].

19.     However, it was the Law Office of Troy D. Krenning LLC (the "Law Office") that paid Bloomstruck, not Reality Check.  [Doc. 33 at ¶ 40; Doc. 47 at 4; Doc. 33-4 at 67:11–16].

---

[7] Defendants assert that "Bloomstruck had approximately 2,300 Postcards mailed to the City's Ward III residents."  [Doc. 33 at ¶ 21].  However, the evidence cited does not support the 2,300 figure; instead, Ms. Petersen testified that it was approximately 2,000 postcards.  [Doc. 33-4 at 74:1–2].

[8] Plaintiffs partially dispute the paragraph in which this assertion is contained, but do not dispute that they did not submit anything by the deadline.  *See* [Doc. 47 at ¶ 33].

20.     Ms. Peterson did not disclose the Law Office's payment in a report of donations and expenditures filed on January 14, 2020 with the State of Colorado.  [Doc. 33 at ¶ 41; Doc. 47 at 4; Doc. 33-13].

21.     On February 4, 2020, Ms. Peterson filed an amended report with the State indicating that the Law Office donated $2,000 to Reality Check and that Reality Check had paid Bloomstruck and Advanced Direct Marketing.  [Doc. 33 at ¶ 42; Doc. 47 at 4; Doc. 33-14].

22.     On January 30, 2020, the City brought charges in municipal court against Bloomstruck based on an alleged failure to comply with Article 17 of the Charter.  [Doc. 33 at ¶ 46; Doc. 47 at 5; Doc. 33-15 at 1–2].

23.     The charges against Bloomstruck were brought to obtain compliance with the Charter, not to obtain jail time.  [Doc. 33 at ¶ 50; Doc. 47 at 5; Doc. 33-11 at 11:24–12:2, 20:6–19, 25:13–24].

24.     On February 25, 2020, the City filed amended municipal charges against Bloomstruck, which were based in part on the alleged association between Bloomstruck and the Law Office.  [Doc. 33 at ¶ 52; Doc. 47 at ¶ 51;[9] [Doc. 33-16 at 1–3, 5].

25.     The City dismissed the case against Bloomstruck before trial.  [Doc. 33 at ¶ 54; Doc. 47 at 5; Doc. 33-10 at 77:17–78:6; Doc. 33-11 at 32:7–15].

26.     Plaintiffs initiated this civil action on March 31, 2022.  [Doc. 1].

## ANALYSIS

Defendants move for judgment in their favor on each of Plaintiffs' claims.  They first challenge Plaintiffs' claims on their merits, asserting that they are entitled to summary judgment

---

[9] Plaintiffs dispute Defendants' assertion "in part" with respect to Defendants' statement about the reason behind filing the amended charges, but do not dispute that amended charges were filed or that the Law Office was mentioned in the supporting affidavit.  [Doc. 47 at ¶ 51].

because each claim fails as a matter of law. [Doc. 33 at 10–18]. Then, they argue that Moses Garcia and Ms. Calderón are immune from suit under the doctrine of absolute prosecutorial immunity, [*id.* at 20], and that all individual Defendants are entitled to qualified immunity against Plaintiffs' claims. [*Id.* at 23]. And finally, Defendants contend that Ms. Peterson lacks standing to bring her claims. [*Id.* at 24]. The Court addresses these arguments below.

## I.    Standing

"Jurisdiction is a threshold question that a federal court must address before reaching the merits," *United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017) (quotation omitted), and thus, the Court addresses Defendants' challenge to Ms. Petersen's standing first. *See Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (standing is jurisdictional). Article III standing requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original)). An injury-in-fact must be concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). And the "causal connection" requirement ensures that the injury complained of is "fairly traceable" to the challenged conduct of the defendant, rather than an "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation and alteration marks omitted).

Defendants argue that Ms. Petersen cannot satisfy either the first or second requirements to establish standing in this case because "she was never personally prosecuted." [Doc. 33 at 24].

They argue that the constitutional deprivations alleged "were directed solely at Bloomstruck" and Ms. Petersen "was never subject to the potential consequence for failing to comply with the City's Charter." [*Id.*].  They maintain that Ms. Petersen's claims should be dismissed, but do not raise specific arguments directed to Ms. Petersen's specific claims. [*Id.* at 25].

Ms. Petersen responds that she has standing to assert all of her claims, but does not raise specific arguments as to any of her particular claims.  She suggests generally that she and Bloomstruck are inextricably intertwined, and thus, the charges against Bloomstruck were essentially charges against her. *See* [Doc. 47 at 22–23].  She contends that she "was plainly subject to the penalties set forth in each of the City's criminal complaints, and under Loveland Municipal Code, [e.g.,] fine and/or imprisonment – in the event defendants prevailed in their prosecution," such that Ms. Petersen "had a personal stake in the outcome of the prosecution." [*Id.* at 24].  She also posits that she has suffered injuries separate from those suffered by Bloomstruck— specifically, that Defendants' actions "chilled [her] political speech significantly, caused her to withdraw from soliciting or conducting any business in Loveland, and to abandon plans to relocate there," and "trammel[ed] her reputation." [*Id.* at 24–25].  Although she argues that Defendants' argument "is insufficient on its own to entitle the defendants to summary judgment on [her] claims," [*id.* at 21], the Court notes that it is Ms. Petersen who bears the burden to establish her standing to bring each of her claims in this action. *Lujan*, 504 U.S. at 561.

First, Ms. Petersen suggests generally that the charges against Bloomstruck were also, in effect, brought against her. *See* [Doc. 47 at 22–23].  However, the evidence she cites in support— a letter sent by Patti Garcia to the City Manager reporting the purported Charter violation, with Ms. Petersen copied, *see* [Doc. 47-22]—shows, at best, that Patti Garcia and/or the other Defendants may have viewed or referred to Ms. Petersen and Bloomstruck interchangeably; this

correspondence does not demonstrate any *injury* specific to *Ms. Petersen*. Indeed, it is undisputed that only Bloomstruck, and not Ms. Petersen, was named in the municipal complaints, *see* [Doc. 33 at ¶ 47; Doc. 47 at ¶ 46; Doc. 33-15 at 1; Doc. 33-16 at 1], and Plaintiff cites no legal authority in support of the proposition that charges raised against a company are, in legal effect, charges against the company's sole member. *See generally* [Doc. 47].

Generally speaking, "absent a direct individual injury, a company's member lacks standing to sue for an injury to the company." *Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019). Bloomstruck "is indisputably a limited liability corporation formed under the laws of the State of [Colorado] with a separate legal entity from its members and its own capacity to sue and be sued." *Galindo v. City of Del Rio*, No. DR-20-cv-20-AM/CW, 2021 WL 2763033, at *5 (W.D. Tex. Mar. 26, 2021) (quotation omitted). Ms. Petersen, "who opted to form a business entity that confers many legal advantages and protections, 'may not move freely between corporate and individual status to gain the advantages and avoid the disadvantages of the respective forms.'" *Id.* (quoting *Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1384 (7th Cir. 1988)). Thus, evidence that the "allegations [underlying the municipal charges] identify [Ms.] Petersen as the person who refused to report allegedly[ ]required information to the City Clerk's Office," *see* [Doc. 47 at 24; Doc. 33-15 at 4; Doc. 33-16 at 6], is insufficient to establish a concrete, particularized *injury* to *Ms. Petersen specifically*. "[T]he fact that it was [Ms. Petersen's] protected conduct 'that precipitated the City's purportedly unconstitutional treatment" of Bloomstruck "is 'irrelevant.'" *Galindo*, 2021 WL 2763033, at *4 (quoting *Duran v. City of Corpus Christi*, 240 F. App'x 639, 642 (5th Cir. 2007) (alteration marks changed)). "[T]he standing inquiry turns on *the plaintiff's injury*, not the defendant's motive." *Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006) (emphasis added). "In other words, the fact that animus toward the agent sparked mistreatment of

the principal does not create an exception to the rule that an agent's section 1983 claim can flourish only if he alleges that he personally suffered a direct, nonderivative injury." *Id.*

In her Response, Ms. Petersen attempts to identify some specific injuries she personally faced. First, she suggests that she has standing because she personally faced potential consequences arising from the municipal charges. In support, she asserts that "imprisonment was raised as a potential consequence" of the municipal charges in a letter sent by Patti Garcia and "reviewed by [Ms.] Calderón." [Doc. 47 at 23; Doc. 47-22 at 1 (the letter from Patti Garcia)]; *see also* [Doc. 33-15 at 2; Doc. 33-16 at 2 (noting that a violation of the Charter is a misdemeanor and is punishable by "a fine or imprisonment")]. But the Court notes that it is undisputed that jail time was not sought in the underlying municipal proceedings. *See supra* Undisputed Material Fact ¶ 23; [Doc. 33 at ¶ 50; Doc. 47 at 5]; *see also* [Doc. 33-11 at 20:12–19 (Ms. Calderón testifying that it was her understanding that if they wanted an individual to serve jail time, the prosecution would need to name that individual in the charges); *id.* at 25:20–22 (Ms. Calderón stating that "at no time did [she] ever think [Ms. Petersen] could go to jail")]. Similarly, Ms. Petersen's cursory suggestion that she could have been fined "in the event [D]efendants prevailed in their prosecution," *see* [Doc. 47 at 24], is insufficient to establish Ms. Petersen's individual standing. While a fine imposed on Bloomstruck could have indeed affected Ms. Peterson, a fine against Bloomstruck alone would be insufficient to confer individual standing upon Ms. Petersen. *See Duran*, 240 F. App'x at 641 ("Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party."); *cf. Barton v. Ne. Transp., Inc.*, No. 21-cv-326 (KMK), 2022 WL 203593, at *9 (S.D.N.Y. Jan. 24, 2022) ("Where proprietors of a business sue to remedy an injury the business sustained, such plaintiffs do not have standing to sue on the basis of that injury, because the corporation has a separate legal existence that cannot be ignored,

even by the sole shareholder.") (quotation and alteration marks omitted); *compare Greenport Gardens, LLC v. Vill. of Greenport*, No. 19-cv-2330-PKC-ARL, 2021 WL 4480551, at *5 (E.D.N.Y. Sept. 30, 2021) (finding that individual plaintiff had standing where fines were imposed on his company *and* the plaintiff *in his personal capacity*).

Next, Ms. Petersen argues that she was injured because Defendants "trammel[led] her reputation and . . . injur[ed] . . . her protected liberty interest." [Doc. 47 at 25]; *see also* [*id.* at 15 (Plaintiffs arguing that "[a] person's reputation is a protected liberty interest" under the Due Process Clause)]. However, this assertion is supported by no citation to record evidence of harm to Ms. Petersen's reputation. *See* [*id.*]; *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). Nor is there any such evidence referenced anywhere in Plaintiffs' Response. "Without a specific reference, '[the Court] will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992)).

And finally, Ms. Petersen argues that Defendants' actions "chilled [her] political speech significantly, caused her to withdraw from soliciting or conducting any business in Loveland, and to abandon plans to relocate there." [Doc. 47 at 24]. Though she does not cite any evidence in support, *see* [*id.*], elsewhere in her Response she directs the Court to her deposition testimony to the same effect. *See* [*id.* at ¶ 54]. Specifically, Ms. Petersen stated in her deposition that she limited her speech after the municipal charges in that "[p]rior to" the filing of the charges, "[she] was pursuing business in Loveland, the City, relocating [her] business" but that due to "this experience and the attention, [she has] not felt comfortable doing business in this city since." [Doc.

47-15 at 102:7–16]; *see also* [*id.* at 104:6–8 ("I do not want to do business in the City of Loveland because of the character of the City of Loveland, the representatives.")].  She also represented that "providing the information [she] provided to the State forms to the State of Colorado about Reality Check, Bloomstruck, and Troy Krenning" caused her to limit her speech because she "was petrified" because she "was threatened with jail.  Prison."  [*Id.* at 105:7–23].[10]

However, the Court is respectfully unpersuaded that Ms. Petersen has articulated a concrete, distinct First Amendment injury personal to her as an individual that is separate from any injury to Bloomstruck.  First, insofar as Ms. Petersen attempts to assert that her personal political speech was chilled, she supports this assertion with no citation to record evidence.  *See generally* [Doc. 47].  Thus, this argument is insufficient to establish her standing at this stage of the case.  With respect to the purported abandonment of a plan to conduct business in Loveland, Ms. Petersen does not argue in her Response or direct the Court to any evidence showing that she conducts any *personal* business aside from the business she conducts as Bloomstruck, *see generally* [*id.*], and she has not articulated why her decision to refrain from conducting business *as Bloomstruck* in Loveland amounts to an injury to *her personally*, as opposed to an injury to Bloomstruck.  Stated differently, absent any explanation from Ms. Petersen of a specific injury separate from any injury realized by Bloomstruck, any harm suffered by Ms. Petersen as a result of her decision to no longer conduct business in Loveland as Bloomstruck "was merely a consequence of an injury suffered by" Bloomstruck and is insufficient to confer standing on Ms. Petersen personally.  *See Galindo*, 2021 WL 2763033, at *4; *see also Woods View II, LLC v. Kitsap Cnty.*, 484 F. App'x 160, 161 (9th Cir. 2012) (finding that sole LLC member lacked standing where

---

[10] Ms. Petersen also cites to page 106 of her deposition testimony but does not include this page in her Exhibit 15.  *See* [Doc. 47 at ¶ 54]; *see also generally* [Doc. 47-15].

she "was not injured directly and independently of the limited liability company," as her "personal financial losses [were] derivative of [the LLC's] own losses".[11]

Accordingly, the Court concludes that Ms. Petersen has not satisfied her standing burden with respect to her claims; more specifically, Ms. Petersen has not established that she experienced a real, concrete injury that is separate from, and not derivative of, any injury suffered by Bloomstruck. Accordingly, the Court will **GRANT** the Motion for Summary Judgment with respect to Ms. Petersen's claims. Having resolved the threshold jurisdictional issue, the Court turns to the merits of Bloomstruck's claims.[12]

## II. Fourth Amendment Malicious Prosecution

To succeed on a malicious prosecution claim under the Fourth Amendment, a plaintiff must establish that (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in the plaintiff's favor; (3) there was no probable cause supporting the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff was damaged. *Mglej v. Gardner*, 974 F.3d 1151, 1170 (10th Cir. 2020).

---

[11] While Ms. Petersen alleges in her Complaint that she suffered emotional distress, *see* [Doc. 1 at 31], she does not argue this theory of injury on summary judgment. *See* [Doc. 47]; *compare Robinson v. Davis*, No. 1:07-cv-00265-JGM, 2010 WL 4062863, at *2 (D. Vt. Oct. 15, 2010) (concluding that the executive director of a non-profit sufficiently asserted standing where he alleged that he suffered emotional distress from the defendants' actions, even though the injury arose from the same conduct causing the non-profit's alleged injuries). In addition, Ms. Peterson did not dispute that jail time was not pursued as part of the municipal action. *See supra* Undisputed Material Fact ¶ 23; [Doc. 33 at ¶ 50; Doc. 47 at 5].

[12] The Court notes that the defenses of absolute immunity and qualified immunity are not jurisdictional in nature. *See Tucker v. Faith Bible Chapel Int'l*, 53 F.4th 620, 626 (10th Cir. 2022) (Bacharach, J., dissenting from the denial of en banc consideration); *Nevada v. Hicks*, 533 U.S. 353, 373 (2001) ("There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction."). The Court concludes that it is in the interest of judicial economy to first address whether there is any genuine dispute of fact as to the merits of Plaintiffs' claims, rather than first addressing Defendants' immunity arguments. *See* Fed. R. Civ. P. 1.

15

Defendants challenge Bloomstruck's ability to satisfy the third and fourth elements of the claim. [Doc. 33 at 14].[13]  The Court concludes that Defendants' argument on the third element—a lack of probable cause—is dispositive of the issue.

A.   **The Probable Cause Measurement**

Lack of probable cause is an "essential element" of a malicious prosecution claim. *Boydston v. Isom*, 224 F. App'x 810, 814 (10th Cir. 2007).   "Probable cause is not a precise quantum of evidence—it does not, for example, 'require the suspect's guilt to be more likely true than false.'" *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).   Under Colorado law, probable cause "requires that the defendant believed 'in good faith . . . in the [wrongful conduct] of the [plaintiff in the underlying action], and that such belief [was] reasonable and prudent.'" *Salazar v. Pub. Tr. Inst.*, 522 P.3d 242, 249 (Colo. App. 2022) (quoting *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954) (alteration marks in original)); *People v. Taylor*, 655 P.2d 382, 384 (Colo. 1982) (the probable cause standard is "whether the evidence is sufficient to induce a person of ordinary prudence and caution to a reasonable belief that the defendant committed the crime charged" (quotation and alteration marks omitted)).   Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

This case differs from the majority of malicious prosecution cases decided in this Circuit, which typically involve an arrested individual defendant and a judicial determination of probable cause.   *Cf., e.g.*, *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) ("Depending on the circumstances of the arrest, a plaintiff can challenge the institution of legal process as wrongful in

---

[13] Because the Court has determined that Ms. Petersen lacks standing to bring her claims, the Court refers to only Bloomstruck when referencing the Parties' arguments in the remainder of this Order unless otherwise necessary.

one of two ways.  If arrested without a warrant[,] . . . a plaintiff can challenge the probable cause determination made during the constitutionally[ ]required probable cause hearing. . . . Or, if arrested pursuant to a warrant, plaintiff can challenge the probable cause determination supporting the warrant's issuance."), *abrogated on other grounds by Thompson v. Clark*, 142 S. Ct. 1332 (2022).  Here, Bloomstruck was a corporate criminal defendant, and no Party has directed the Court to any record evidence reflecting a probable cause determination made by the municipal court.  In similar circumstances, another court in this District held that the probable cause inquiry turned on "the totality of information that the prosecutor had available to him or her when choosing to file charges."  *Sanchez v. Duffy*, 416 F. Supp. 3d 1131, 1165 (D. Colo. 2018).  The Court agrees with this standard, and because no Party makes an express argument as to the appropriate measure of probable cause, the Court adopts this same rule here.

## B.      Whether Defendants Had Probable Cause

Defendants contend that Bloomstruck cannot establish a lack of probable cause supporting the underlying charges.  [Doc. 33 at 15].  They argue that the following facts, known to Ms. Calderón and Moses Garcia, are sufficient to establish probable cause of a violation of the Charter: (1) a postcard containing a political message, seemingly paid for by Reality Check, was sent to City residents; (2) Reality Check reported receiving $2,000 in connection with the postcard, but did not report any spending, in apparent conflict with the representation on the postcard; (3) Bloomstruck's counsel informed Patti Garcia that Bloomstruck would not submit any expenditure filings to the City; and (4) Patti Garcia reported to the City Manager that "Bloomstruck and Reality Check were in apparent violation of the Charter."  [*Id.*].  Defendants note that the municipal complaints cite these facts, *see* [Doc. 33-15 at 1; Doc. 33-16 at 1], and thus, they argue

that any reasonable prosecutor would have believed that Bloomstruck violated the Charter.  [Doc. 33 at 15].

Bloomstruck responds that no probable cause existed for the filing of the municipal charges because it was legally impossible for Bloomstruck to have committed the Charter violation.  [Doc. 47 at 12].  It argues that "Bloomstruck LLC was **expressly** exempted from the definition of 'person' who could form a political committee, which was an element of the charged offense." [*Id.* (emphasis in original)].  However, Bloomstruck does not expound on this argument or explain why Bloomstruck is not a "person" under the Charter's definition nor does Bloomstruck cite any authority to support the proposition.  *See* [*id.*].  Although Bloomstruck disputes in its factual recitations that Bloomstruck is a person, *see, e.g.*, [*id.* at ¶¶ 15, 43], it makes no substantive argument explaining this position.[14]

Bloomstruck does note that

Ms. Petersen provided [Moses] Garcia and [Ms.] Calderón with the original LLC formation documents (2009, California) and Colorado Articles of Organization (2016), both of which were to register Bloomstruck, LLC as a sales and consulting firm, and both of which were publicly available.  Bloomstruck's attorney moved for dismissal [of the municipal charges] on grounds of legal impossibility, and lack of probable cause, laying out the statutory exemption and demonstrating that the 'political committee' element could not possibly be proved.  The defendants refused to address the issue, and obdurately and maliciously persisted.

[*Id.* at 12–13 (citation omitted)].  In support, Bloomstruck cites the two motions to dismiss it filed in the municipal case, [Doc. 47-1; Doc. 47-2], one of which was apparently accompanied by

---

[14] Plaintiffs did allege in their Complaint that "Bloomstruck is *a partnership* that was previously established in 2009 for the purposes of conducting sales and consulting activities" and "[t]hus, Bloomstruck was, and still is, by express definition, incapable of being or forming a 'political committee' as defined by the City's Charter, let alone 'failing to register' or 'failing to file required reports' as one."  [Doc. 1 at ¶¶ 98–99 (emphasis added)].  However, Plaintiffs do not raise this argument in their Response.  *See generally* [Doc. 47].  In addition, the Court notes that Plaintiffs assert in their Response that "Bloomstruck is a single-member LLC."  [*Id.* at ¶ 46].

Bloomstruck's formation and/or registration documents, which reflect that Bloomstruck was formed in 2009 for the purposes of "sales, consulting." [Doc. 47-2 at 6]. As the Court understands Bloomstruck's argument, because Bloomstruck was formed in 2009 for non-political purposes, it could not have been legally considered a "political committee" because it was "previously established for a primary purpose outside the scope of" the Charter. *See* [Doc. 33-2 at 2].

However, the Court notes that the motions to dismiss were filed on August 24, 2020 and October 26, 2020, respectively, i.e., after the City filed the original and amended municipal charges. *See* [Doc. 47-1 at 7; Doc. 47-2 at 3]; *see also* [Doc. 33-15 at 2 (the original charges filed January 30, 2020); Doc. 33-16 (the amended charges filed February 25, 2020)]. Thus, even assuming Bloomstruck is correct that the filing of those motions rendered Ms. Calderón and Moses Garcia on notice that Bloomstruck was not formed for political purposes, this would not have any effect on whether they had probable cause supporting the charges *at the time they filed the charges* on January 30, 2020. [Doc. 33 at ¶ 46; Doc. 47 at ¶ 46]. And Bloomstruck does not clearly argue that Defendants can be held liable for malicious prosecution for any actions taken between October 26, 2020 and March 8, 2021, the day the charges were dismissed. *See* [Doc. 47 at 13]. Bloomstruck directs the Court to no evidence of what, if anything, occurred between those dates, nor does it direct the Court to evidence that it incurred any damages between those dates—i.e., that Bloomstruck was damaged by Defendants' failure to dismiss the charges sooner.

Furthermore, though this evidence is not referenced by Bloomstruck in its argument, the Court notes that Bloomstruck's counsel, during her conferral with Patti Garcia, suggested that Bloomstruck was not governed by the Charter. The email to Patti Garcia stated: "REALITY CHECK COLORADO is not a candidate committee, nor a political committee nor an issue committee as defined in Article 17-2 of the Charter for the City of Loveland." [Doc. 33-7 at 5].

However, counsel did not raise the argument that Bloomstruck was formed in 2009 for non-political purposes to Patti Garcia in that email, and it does not appear from the face of this email that the formation documents were attached to the email. *See* [*id.*].  Patti Garcia responded to counsel's email stating, "[e]ither Reality Check Colorado is acting as a political committee under Loveland's Charter definition or a single individual has obligated an independent expenditure. Either way, reports are now due."  [*Id.* at 4].  Moses Garcia and Ms. Calderón were copied on Patti Garcia's email response, though it is not definitively clear from the record whether they received a copy of counsel's email. *See* [*id.*].

The Court is respectfully unpersuaded, however, that a reasonable jury could conclude, based on Bloomstruck's counsel's statement to Patti Garcia that Bloomstruck "is not . . . a political committee," that Defendants lacked probable cause to file the charges.  Stated differently, Bloomstruck has not directed the Court to any evidence demonstrating that at the time Moses Garcia and Ms. Calderón filed the charges (or the amended charges), they were aware that it was a "legal impossibility" for Bloomstruck to be charged as a political committee under the Charter.

To be sure, courts have held that a government official may not ignore facts in the probable cause determination. *See, e.g.*, *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (stating that a "police officer may not close her or his eyes to facts," and that "reasonable avenues of investigation must be pursued"); *Lawrence v. City Cadillac*, No. 10 Civ. 3324, 2010 WL 5174209, at *6 (S.D.N.Y. Dec. 9, 2010) ("[D]efendants are not obliged to exonerate [the] plaintiff or uncover exculpatory evidence, but the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quotation omitted); *Rakun v. Kendall Cnty.*, No. CIV.A. SA-06-cv-1044, 2007 WL 2815571, at *12 (W.D. Tex. Sept. 24, 2007) ("[T]he Court concludes that an officer's failure to investigate is not actionable in its own right, but is

actionable only insofar as it may negate the existence of probable cause and thus provide a claim under the Fourth Amendment.")  But Bloomstruck does not make the argument that Defendants failed to properly investigate the purpose of its formation, and there is no evidence that Bloomstruck informed Defendants of the facts underlying its formation until long after the charges were filed. Bloomstruck's counsel's statement that Bloomstruck is "not . . . a political committee" under the Charter, without any supporting context, is insufficient to create a genuine dispute of fact as to whether Defendants willfully ignored available facts in the probable cause determination.

For these reasons, the Court concludes that Bloomstruck has not established a genuine issue of material fact as to whether there was probable cause to bring the municipal charges against it and no reasonable jury could find that Defendants lacked probable cause in filing the charges against Bloomstruck.  Accordingly, the Motion for Summary Judgment is respectfully **GRANTED** with respect to Bloomstruck's Fourth Amendment malicious prosecution claim.

### III.   First Amendment Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) the plaintiff "was engaged in constitutionally protected activity," (2) "the government's actions caused [an] injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) "the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009); *see also Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020).  Defendants argue that Bloomstruck cannot establish any of these elements.  [Doc. 33 at 11].  Because the third element—the requisite causal connection—is dispositive, the Court limits its analysis to this essential element.

"[P]roving the link between the defendant's retaliatory animus and the plaintiff's injury in retaliatory prosecution cases 'is usually more complex than it is in other retaliation cases.'" *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018) (quoting *Hartman v. Moore*, 547 U.S. 250, 261 (2006)).  The Supreme Court has adopted the requirement that a plaintiff asserting a retaliatory prosecution claim must "plead and prove the absence of probable cause for the underlying criminal charge." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019).  "The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim" based on a retaliatory prosecution.  *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020).

Defendants argue, *inter alia*, that Bloomstruck cannot prove a lack of probable cause supporting the municipal charges against it.  [Doc. 33 at 13].  Bloomstruck does not respond directly to this argument, though the Court considers its arguments made in the context of its Fourth Amendment malicious prosecution claim.  *See* [Doc. 47 at 12–13].  This Court has already determined that Bloomstruck has not established a genuine dispute of material fact with respect to whether Defendants lacked probable cause to bring the municipal charges.  As a result, Defendants are entitled to summary judgment with respect to Bloomstruck's First Amendment claim, and the Motion for Summary Judgment is **GRANTED** with respect to this claim.

## IV.    Fourteenth Amendment Due Process

The Fourteenth Amendment Due Process Clause states that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207,

1210 (10th Cir. 2000).[15]  "Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  "In order to prevail on a procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or a property interest and (2) that no due process of law was afforded."  *Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trustees*, 610 F.3d 558, 564 (10th Cir. 2010); *see also Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1201 (10th Cir. 2017) (directing courts to ask whether the plaintiff was "afforded an appropriate level of process").

Defendants argue that Bloomstruck received all the process that was due to it and, thus, it cannot succeed on a Fourteenth Amendment due process claim.  [Doc. 33 at 18].  Defendants proceed through the three-part test identified by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires a court to determine the procedural protections demanded by a particular situation by considering "(1) the interests of the individual in retaining their property and the injury threatened by the official action; (2) the risk of error through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the costs and administrative burden of the additional process, and the interest of the government in efficient adjudication."  *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1163 (D. Colo. 2020) (citing *Mathews*, 424 U.S. at 335).  Defendants contend that, under *Mathews*, the procedures afforded Bloomstruck were constitutionally adequate.  [Doc. 33 at 18–20].

---

[15] Plaintiffs do not make clear in their Complaint whether they assert a substantive or procedural due process claim, but the Court notes that they raise no substantive due process argument in their Response.  *See* [Doc. 47 at 14–16].  Accordingly, the Court does not construe the Complaint as asserting a substantive due process claim.

Bloomstruck does not respond directly to this argument or address the *Mathews* factors. *See* [Doc. 47 at 14–16]. Instead, it notes that "[a] person's reputation is a protected liberty interest under the due process clause," [*id.* at 15 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 473 (1971))], and asserts that "[a] deprivation of liberty is constitutional only if it is imposed in accordance with general rules." [*Id.* at 14]. It contends that the individual Defendants "created a new [procedure for enforcing municipal code violations], which they made up moment-by-moment" to conceal the involvement of Jared Fogle—the subject of the postcard. [*Id.* at 15]. It also argues that "had [Defendants] followed existing procedure," i.e., investigation "by a code or law enforcement officer," the issuance of a citation or information, and then involvement by the City prosecutor—"a third-party investigation would necessarily have exposed [Jared Fogle]." [*Id.*].

For a number of reasons, Bloomstruck's arguments are insufficient to escape summary judgment. First, although Bloomstruck cursorily states that Defendants "subjected the plaintiffs to these selective procedures, stigmatizing them, harming their reputation in the community, and subjecting them to a criminal prosecution and ultimately, denying them any forum, opportunity, or process to vindicate their liberty interests," [*id.*], Bloomstruck fails to address the *Mathews* factors or explain (1) what process it believes it was due and (2) how it was denied that process, or what process it received instead. *See generally* [*id.*];[16] *see also Wilkinson v. Austin*, 545 U.S.

---

[16] The Court notes that the Tenth Circuit has recognized that a plaintiff can proceed on a Fourteenth Amendment due process claim on the basis that "the government has violated the Due Process Clause by damaging [the plaintiff's] reputation." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1184 (10th Cir. 2016). But to prevail on this type of claim, the plaintiff must prove "two sub-elements: 'that (1) the government made a false statement about [the plaintiff] . . . that was sufficiently derogatory to injure his reputation, and that (2) [the plaintiff] experienced a governmentally imposed burden that significantly altered his status as a matter of state law.'" *Hinkle*, 962 F.3d at 1230 (quoting *Al-Turki v. Tomsic*, 926 F.3d 610, 617 (10th Cir. 2019) (alterations in original))]. Damage to reputation alone is not sufficient to meet the second

209, 224–25 (2005) (explaining that the Supreme Court has "embraced a framework to evaluate the sufficiency of particular procedures" using the test set forth in *Mathews*).  Indeed, "a state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures." *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 649 (D.C. Cir. 1987).  Instead, a court must "identify[] the substantive interest entitled to constitutional protection and then determine[e] what process is due before an individual can be deprived of that interest." *Id.*  Because Bloomstruck failed to articulate what process Bloomstruck was due and deprived of, the Court cannot make that determination.  *See Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1145 n.5 (D. Colo. 2016) (a court cannot raise arguments on behalf of a party that it has not raised itself); *Adler*, 144 F.3d at 672 ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [should be] wary of becoming advocates who comb the record . . . and make a party's case for it.").

Moreover, although Bloomstruck suggests that Defendants committed a constitutional violation by disregarding procedures "already in place for enforcement of municipal code violations" and instead "created [an] *ad hoc* procedure," [Doc. 47 at 15], it has provided no citations to record evidence establishing the "existing procedure" for code violations, so as to support its position that Defendants deviated from that standard procedure.  *See* [*id.*].  At best, Bloomstruck disputes Defendants' assertion that "[i]n September 2020, [Patti] Garcia suggested a campaign violation administrative procedure in addition to Article 17 to [the] City Council, which the City adopted," *see* [Doc. 33 at ¶ 7], by stating: "Disputed.  [Patti] Garcia[] testified that she suggested a new administrative process to handle third-party complaints of alleged campaign

---

sub-element.  *See id.* at 1230–31.  Bloomstruck does not address these factors or otherwise argue that it has asserted a "stigma-plus" claim.  *See generally* [Doc. 47].

violations.  The suggestion was made well after the prosecution of Petersen and Bloomstruck commenced."  [Doc. 47 at ¶ 7].  But not only does the cited testimony not conclusively establish that Patti Garcia suggested this new process after the prosecution of Bloomstruck, *see* [Doc. 47-16 at 20:1–21:6, 29:8–17],[17] at best, this would show only that Patti Garcia suggested that the City of Loveland adopt new procedures; it does not show that Defendants failed to comply with established procedures during the prosecution of Bloomstruck.[18]

In sum, Bloomstruck has not adequately articulated its procedural due process claim and has not demonstrated the existence of a genuine dispute of fact precluding summary judgment on this claim.  Accordingly, the Court will **GRANT** the Motion for Summary Judgment with respect to Bloomstruck's Fourteenth Amendment claim.

## V.  Municipal Liability

Finally, the Court briefly addresses municipal liability.  Defendants argue that Bloomstruck cannot establish municipal liability to hold the City liable for any constitutional violations.  [Doc. 33 at 25].  First, they contend that because there is no underlying constitutional violation, there can be no municipal liability.  [*Id.*].  They alternatively maintain that Bloomstruck cannot point to any evidence demonstrating a policy or custom underlying any constitutional deprivations.  [*Id.*].  In its Response, Bloomstruck counters that Defendants "admit that Moses Garcia is an authorized policy- and decision-maker who may bind the City" and "[b]ecause [Moses] Garcia authorized the

---

[17] The Court notes that, at the end of page 29 of Patti Garcia's deposition transcript, she was asked whether "at the time of the charges being filed against Bloomstruck, LLC, . . . [whether] the City of Loveland did not have an established procedure for investigating third-party complaints," but the pages on which the answer to this question may appear have not been provided by Bloomstruck.  *See* [Doc. 47-16 at 5–6].

[18] Bloomstruck also cursorily states that "[t]hat a prosecutor's introduction of false evidence is a due process violation has been settled for nearly ninety years."  [Doc. 47 at 16].  This statement is not tied to any clear argument, and Bloomstruck has not otherwise argued anywhere that any Defendant introduced false evidence into the municipal proceedings.  *See generally* [*id.*].

torts as the City's policy-maker, the City is liable to the plaintiffs." [Doc. 47 at 25]. Bloomstruck's argument is unaccompanied by citations to record evidence and is not developed any further. *See* [*id.*]. "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *see also Singer v. Steidley*, 596 F. App'x 600, 602 n.2 (10th Cir. 2014) (a district court is not required to consider "cursory and conclusory argument[s] in ruling on summary judgment.").

The Court has concluded that Bloomstruck has not established a genuine issue of material fact precluding summary judgment on its First, Fourth, or Fourteenth Amendment claims. Accordingly, the Court concludes that Bloomstruck cannot succeed on a municipal liability claim against the City of Loveland, *see Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *see also Crowson v. Wash. Cnty.*, 983 F.3d 1166, 1187 (10th Cir. 2020) "[A] claim under § 1983 against . . . a municipality cannot survive a determination that there has been no constitutional violation."), and the Court will **GRANT** the Motion for Summary Judgment with respect to Bloomstruck's claims against the City.

In sum, Bloomstruck has not established a genuine dispute of fact precluding summary judgment in Defendants' favor on any of its claims. As a result, the Motion for Summary Judgment is **GRANTED**.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendants' Motion and Brief in Support of Summary Judgment [Doc. 33] is **GRANTED**;

(2)   The Clerk of Court shall **ENTER** judgment in favor of Defendants and against Plaintiffs on each of Plaintiffs' claims;

(3)   Defendants are **AWARDED** their costs pursuant to Rule 54 of the Federal Rules of Civil Procedure and Local Rule 54.1; and

(4)   The Clerk of Court is **DIRECTED** to terminate this case.

DATED:  April 20, 2023                                      BY THE COURT:

_____
Nina Y. Wang
United States District Judge